STATE of Missouri, Respondent,

v.

Shirley D. JAMES, Appellant.

No. 12488.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 8, 1982.

Motion for Rehearing Overruled and to Transfer to Supreme Court Denied
Oct. 8, 1982.

Loren R. Honecker, Springfield, for appellant.

John Ashcroft, Atty. Gen., Kelly S. Klopfenstein, Asst. Atty. Gen., Jefferson City, for respondent.

BILLINGS, Judge.

Defendant Shirley D. James was tried and convicted by a Greene County jury of stealing without consent in violation of § 570.030, RSMo 1978 and sentenced to two years imprisonment. Her appeal challenges the sufficiency of the evidence to support the verdict, attacks the verdict directing instruction, and contends she should have been granted a mistrial because of a prejudicial answer given by a witness for the prosecution. We affirm.

■ In reviewing the sufficiency of the evidence to sustain defendant's conviction, we accept as true all evidence, circumstantial or direct in nature, favorable to the verdict, together with all favorable inferences which can reasonably be drawn therefrom, and reject and cast aside all evidence and inferences to the contrary. *State v. Nash,* 621 S.W.2d 319 (Mo.App.1981). In light of the foregoing standard of review, we find no difficulty in concluding the jury could reasonably find that the defendant was an active participant in a "diamond switch" at the Diamond Shoppe in Springfield, as demonstrated by the facts which follow.

A well-dressed couple [defendant and Donald Ray James] entered the jewelry store on April 28, 1980, and the man asked a female clerk to see a large diamond. The clerk went to a vault and returned with a 1.97 carat unmounted diamond which she placed in a pair of jeweler's lock tweezers. The clerk handed the tweezers to the man, together with a jeweler's loupe. The clerk observed the defendant kept watching the back doors of the establishment. As the man started examining the diamond, the defendant pointed at some rings in a showcase and made an inquiry of the clerk concerning them.

In the meantime, defendant's companion had turned his back to the clerk and was facing the front of the jewelry store as he was purportedly viewing the diamond through the loupe. Defendant then directed another question to the clerk about the rings in the showcase. The clerk ignored the second question because she could see the man's arm moving down even though he was continuing to hold the loupe to his eye with his other hand. By this time the clerk's suspicions were aroused and she went around the counter in order to determine what the man was doing. She discovered the tweezer was empty and the man was fingering an ostensible diamond in his hand. He placed the stone on a piece of paper that the clerk had originally placed on the counter and asked if the store would accept a ring he was wearing in trade and handed her his ring. The clerk handed the man's ring to another employee to take to the rear of the store for an appraisal.

The clerk then noticed that the stone the man had placed on the paper did not appear to be the diamond she had obtained from the vault. The man stated "we will be back in an hour." The clerk replied they would conclude the transaction right then. The couple hurriedly started towards the front entrance of the store, followed by the clerk who again told them she wanted to complete the matter right then. As the couple departed, in a fast walk, the clerk took the stone the man had placed on the paper to the store's jeweler who recognized it was not the diamond from the vault but was an imitation diamond.

The clerk alerted two male employees of the store that the couple had the store's diamond and the two employees started after defendant and the man. By this time the twosome were running across the parking lot towards a Cadillac automobile which bore Texas license plates. The motor of the car was running and the driver was Ben Millican. Defendant and her companion got into the rear seat of the car. As the vehicle started moving, one of the male employees of the jewelry store positioned himself directly in its path in an effort to block its departure. His efforts were re-

warded by being struck by the vehicle and knocked to the paving.

A short time later the Cadillac was observed driving onto the parking lot of a Springfield convenience store located some distance from the jewelry store. The three occupants of the car were identified as defendant, Don James and Ben Millican. About 15 minutes later this trio appeared at a house about two blocks from the convenience store. Defendant asked if she could use the telephone at the residence to call a taxicab "because their car had broken down."

The abandoned Cadillac was searched at the convenience store parking lot. In some clothing left in the car, the officers found another large fake diamond. Defendant, Don James, and Ben Millican, known associates of each other, were thereafter arrested in Texas.

As was stated in *State v. Arnold,* 566 S.W.2d 185 (Mo. banc 1978), at 187:

" 'It is well settled that a party may be charged with the commission of the felony and be held under such charge for being present and participating in concert with the others in the commission of the crime, or for being present and aiding and assisting another in doing it. It is not necessary that he, personally, have done all the things which together make up the elements of the crime. *State v. Sheard,* Mo.Sup., 276 S.W.2d 196, certiorari denied, 352 U.S. 849, 77 S.Ct. 68, 1 L.Ed.2d 60; *State v. Whitaker,* Mo.Sup., 275 S.W.2d 316; *State v. Chernick,* Mo. Sup., 278 S.W.2d 741.' "

" . . . [T]he requirement of 'affirmative participation' may be satisfied by inference and the evidence need not directly place the defendant in the act of committing the crime for which he is charged. This principle was recognized in *State v. Reed,* 453 S.W.2d 946 (Mo.1970), where the court held at 948–949: ' . . . [I]t has also been held that *presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.* As stated in *State v.*

*Ramsey,* Mo., 368 S.W.2d 413, 417, "Evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction." It is not necessary that the defendant personally did all of the things which together make up the elements of the crime. *State v. Butler,* Mo., 310 S.W.2d 952, 957.' " [citations omitted]. See: *State v. Harper,* 637 S.W.2d 342, (Mo.App.1982); *State v. Harris,* 602 S.W.2d 840 (Mo.App.1980). [Our emphasis].

Here, we have the defendant entering the jewelry store with a male companion, watching the rear entrance, and attempting to divert the clerk's attention while her partner was in the process of switching the fake diamond for the store's diamond. He and the defendant beat a hasty retreat from the store when the clerk became suspicious that a switch had taken place. They ran to the awaiting getaway car and fled the scene. She attempted to obtain further transportation for the trio after they abandoned the getaway car. The threesome were thereafter seen together in Texas. We hold the facts and circumstances were sufficient for the jury to conclude that defendant was a viable participant in the "diamond switch."

■ Defendant's general objection at trial and in her motion for a new trial does not suffice to preserve her belated claim of error in the verdict directing instruction. Rule 28.03, V.A.M.R., requires " . . . specific objections to given or refused instructions . . . shall be required in motions for new trial unless made on the record at the time of trial." Defendant's point has not been preserved for appellate review. *State v. Martin,* 620 S.W.2d 54 (Mo.App.1981). We decline plain error review, as suggested by defendant's present counsel, because we do not find the instruction misdirected or failed to instruct the jury upon the law so as to cause manifest injustice or miscarriage of justice. *State v. Ealey,* 624 S.W.2d 465 (Mo.App.1981).

■ We find no merit in defendant's remaining point. She complains her motion for a mistrial should have been granted

because a witness for the State stated she had learned of defendant's husband's identity "because of the other trial."

The entire thrust of the defense in this case was directed toward efforts to show that the state's witnesses were mistaken in their identification of defendant, Don James, and Ben Millican. Lengthy cross-examinations were conducted by defendant's trial attorney of each witness concerning their identification testimony. In developing from witness Lewis that she had previously identified someone other than Don James as the person who entered the jewelry store, the following occurred:

"Q: So, you don't say that Don James, her husband, was in the shop that day, do you ... assuming that this other photograph I was confused about is Don James ... this gentleman wasn't in the shope [sic] that day, was he ... depicted in the record as State Exhibit 1–C?

A: Well, of course, I know now that he was.

Q: Well, because the prosecutor has told you that?

A: No, of course not ... because of the other trial. Now, I wasn't sure ....

Q: ... Now, just a minute, please. Forgive me, just a minute but I'm afraid we may be getting into an error here in this thing, and we don't want to cause a mistrial. Is your identification of this defendant sitting here in Court today ... irrespective of what someone may have told you ... as reliable as your identification of this guy you picked out in the State Exhibit 1–B? Is your identification about as reliable under both circumstances?

A: No."

Following another question to and answer by the witness, defendant's counsel offered State Exhibit 1–B and it was received in evidence and passed to the jury for viewing. The witness was then excused and another State's witness sworn. Counsel, out of the hearing of the jury, then moved for a mistrial "for the reason that the previous witness made the statement she knows about the guilt of the co-defendant in view of a prior trial." The court overruled defendant's motion but offered to instruct the jury to disregard the statement of the witness about the "other trial" but defense counsel requested "no admonition at all be given."

First, we observe that the witness did not make the statement attributed to her in counsel's objection. Second, no objection was made to the actual answer given, nor was there a motion to strike the same. Third, it is arguable that defendant invited the answer by the question. Fourth, defense counsel repeatedly referred to "previous hearings" and "the last trial"[1] in examining State's witnesses about their prior testimony. We find no abuse of discretion by the trial court in not granting the motion for a mistrial.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.

---

1. Defendant's trial was held on September 16 and 17, 1981. Donald Ray James' trial was held on May 21, 22 and 23, 1981. Benjamin Clifford Millican's trial was conducted on August 20 and 21, 1981.